1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RONALD JAMES SULIIN,

               Plaintiff,

        vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social
Security,

             Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. EDCV 14-0585-JPR

**MEMORANDUM OPINION AND ORDER
REVERSING COMMISSIONER**

18
**I.**    **PROCEEDINGS**

19     Plaintiff seeks review of the Commissioner's final decision

20 denying his application for Social Security supplemental security

21 income ("SSI").  The parties consented to the jurisdiction of the

22 undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This

23 matter is before the Court on the parties' Joint Stipulation,

24 filed January 23, 2015, which the Court has taken under

25 submission without oral argument.  For the reasons stated below,

26 the Commissioner's decision is reversed and this action is

27 remanded for further proceedings.

28

1

**II.   BACKGROUND**

Plaintiff was born on April 18, 1963.  (Administrative Record ("AR") 253, 283.)  He completed part of the 12th grade and previously managed his own concrete-pump business and operated concrete-placement pumps.  (AR 49-52, 94-95.)

Plaintiff was granted SSI benefits on the basis of mental disability, but they were terminated upon his incarceration. (See AR 32, 40; see also AR 95 (Plaintiff testifying that he was incarcerated in 2006 and 2007 for grand theft).)  On November 5, 2008, Plaintiff again sought SSI benefits, alleging disability beginning October 1, 2008.  (AR 129.)  In a decision dated October 22, 2010, an ALJ found that Plaintiff suffered from severe impairments of mood disorder, anxiety disorder, personality disorder, and history of polysubstance abuse but was not disabled by those impairments.  (AR 131, 136.)

On December 13, 2010, Plaintiff again filed an application for SSI benefits, alleging that he had been unable to work since November 3, 2010, because of "Manic depression," "bipolar," "ptsd," "lower back pain," and "hip and leg pain."  (AR 253-61, 287.)  After Plaintiff's application was denied, he requested a hearing before an ALJ.  (AR 164-66.)  Hearings were conducted on April 4 and November 8, 2012.  (AR 29-59, 60-90.)  On each occasion, Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (See AR 30, 61.)  In a written decision issued November 21, 2012, the ALJ determined that Plaintiff was not disabled.  (AR 13-28.)  On February 1, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  This action followed.

1  **III. STANDARD OF REVIEW**

2      Under 42 U.S.C. § 405(g), a district court may review the

3  Commissioner's decision to deny benefits.  The ALJ's findings and

4  decision should be upheld if they are free of legal error and

5  supported by substantial evidence based on the record as a whole.

6  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra

7  v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial

8  evidence means such evidence as a reasonable person might accept

9  as adequate to support a conclusion.  Richardson, 402 U.S. at

10 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

11 It is more than a scintilla but less than a preponderance.

12 Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

13 Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether

14 substantial evidence supports a finding, the reviewing court

15 "must review the administrative record as a whole, weighing both

16 the evidence that supports and the evidence that detracts from

17 the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,

18 720 (9th Cir. 1996).  "If the evidence can reasonably support

19 either affirming or reversing," the reviewing court "may not

20 substitute its judgment" for that of the Commissioner.  Id. at

21 720-21.

22 **IV.  THE EVALUATION OF DISABILITY**

23     People are "disabled" for purposes of receiving Social

24 Security benefits if they are unable to engage in any substantial

25 gainful activity owing to a physical or mental impairment that is

26 expected to result in death or which has lasted, or is expected

27 to last, for a continuous period of at least 12 months.  42

28 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

3

(9th Cir. 1992).

A.   The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled.  20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his

_____

[1]   RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  past work; if so, he is not disabled and the claim must be
2  denied.  § 416.920(a)(4)(iv).  The claimant has the burden of
3  proving he is unable to perform past relevant work.  <u>Drouin</u>, 966
4  F.2d at 1257.  If the claimant meets that burden, a prima facie
5  case of disability is established.  <u>Id.</u>  If that happens or if
6  the claimant has no past relevant work, the Commissioner then
7  bears the burden of establishing that the claimant is not
8  disabled because he can perform other substantial gainful work
9  available in the national economy.  § 416.920(a)(4)(v).  That
10  determination comprises the fifth and final step in the
11  sequential analysis.  § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5;
12  <u>Drouin</u>, 966 F.2d at 1257.

13       B.   <u>The ALJ's Application of the Five-Step Process</u>
14       At step one, the ALJ found that Plaintiff had not engaged in
15  substantial gainful activity since November 3, 2010, the
16  application date.  (AR 15.)  At step two, she found that
17  Plaintiff had the severe impairments of "depression; anxiety;
18  bipolar disorder; posttraumatic stress disorder (PTSD); attention
19  deficit hyperactivity disorder (ADHD); chronic low back pain; and
20  a history of polysubstance abuse with Methadone treatment."
21  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's
22  impairments did not meet or equal any of the impairments in the
23  Listing.  (AR 16.)  At step four, she found that Plaintiff had
24  the RFC to perform medium work with additional limitations:

25       [T]he claimant can lift and/or carry 50 pounds
26       occasionally and 25 pounds frequently; he can stand
27       and/or walk for six hours out of an eight-hour workday
28       with regular breaks; he can sit for six hours out of an

                              5

1   eight-hour workday with regular breaks; he is unlimited
2   with respect to pushing and/or pulling, other than as
3   indicated for lifting and/or carrying; he can frequently
4   perform postural activities; he cannot climb ladders,
5   ropes, or scaffolds; he cannot work at unprotected
6   heights, around moving machinery, or around other
7   hazards; he is limited to nonpublic, unskilled work; he
8   cannot perform work requiring hypervigilence [sic] or
9   intense concentration on a particular task, meaning the
10  claimant cannot be off task for even the briefest amount
11  of time like watching a surveillance monitor or where
12  safety might be an issue; he cannot perform fast paced
13  production or assembly line type work; and the claimant
14  will likely be off task up to 10 percent of the workday
15  or work week, which is about 48 minutes a day or 4 hours
16  a week due to psychological symptoms and side effects of
17  medications.

18  (AR 17.)  Although the ALJ found that Plaintiff was unable to
19  perform his past relevant work, she concluded, based on the
20  testimony of the VE, that he could perform jobs existing in
21  significant numbers in the economy.  (AR 22-23.)  She therefore
22  found Plaintiff not disabled.  (AR 23.)

23  **V.   DISCUSSION**

24      Plaintiff contends that the ALJ erred in (1) assessing
25  medical-opinion evidence of the severity of his mental
26  impairments, (2) rejecting the recommended limitation to simple
27  tasks, and (3) relying on the testimony of the VE.  (J. Stip. at
28  5.)  Because the ALJ failed to provide specific and legitimate

6

1  reasons for discounting the medical-opinion evidence and
2  rejecting the limitation to simple tasks, remand is warranted.
3      A.   The ALJ Failed to Give Adequate Reasons for Discounting
4           the Medical-Opinion Evidence
5           1.   Applicable law
6      Three types of physicians may offer opinions in Social
7  Security cases: (1) those who directly treated the plaintiff, (2)
8  those who examined but did not treat the plaintiff, and (3) those
9  who did neither.  Lester, 81 F.3d at 830.  A treating physician's
10 opinion is generally entitled to more weight than that of an
11 examining physician, and an examining physician's opinion is
12 generally entitled to more weight than that of a nonexamining
13 physician.  Id.
14     This is true because treating physicians are employed to
15 cure and have a greater opportunity to know and observe the
16 claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).
17 If a treating physician's opinion is well supported by medically
18 acceptable clinical and laboratory diagnostic techniques and is
19 not inconsistent with the other substantial evidence in the
20 record, it should be given controlling weight.  § 416.927(c)(2).
21 If a treating physician's opinion is not given controlling
22 weight, its weight is determined by length of the treatment
23 relationship, frequency of examination, nature and extent of the
24 treatment relationship, amount of evidence supporting the
25 opinion, consistency with the record as a whole, the doctor's
26 area of specialization, and other factors.  § 416.927(c)(2)-(6).
27     When a treating or examining physician's opinion is not
28 contradicted by other evidence in the record, it may be rejected

7

only for "clear and convincing" reasons.  See Carmickle v.

Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)

(quoting Lester, 81 F.3d at 830-31).  When a treating or

examining physician's opinion is contradicted, the ALJ must

provide only "specific and legitimate reasons" for discounting

it.  Id.  The weight given an examining physician's opinion,

moreover, depends on whether it is consistent with the record and

accompanied by adequate explanation, among other things.

§ 416.927(c)(3)-(6).

> 2.  Relevant background

> a.  *Examining psychiatrist Romualdo Rodriguez*

On December 16, 2010, psychiatrist Romualdo Rodriguez

examined Plaintiff on behalf of the agency.  (See AR 343-49.)

Plaintiff reported that he suffered PTSD, bipolar disorder,

and depression and "endorsed symptoms of ADHD," with which he was

diagnosed at age 25.  (AR 343-44.)  He stated that he could not

keep a job because of his ADHD symptoms.  (AR 343; see also AR

344 (describing symptoms).)  Plaintiff said that he was adopted

following his parents' suicide and was troubled by memories of

sexual abuse by a cousin and by PTSD following a fatal car

accident.  (AR 344.)  He was psychiatrically hospitalized twice

at age 34 and had taken psychiatric medication, although not in

the previous seven months.  (Id.)  Plaintiff reported a history

of substance abuse, especially heroin and cocaine, but said he

had been drug-free for a year and attended support groups.  (Id.;

see also AR 345.)  He reported 10 arrests, for drug possession

and grand theft auto, and said he was released from prison most

recently in 2005.  (AR 345.  But see AR 95 (testifying to

8

1   incarceration from 2006 to 2007).)  He reported last working in
2   1997.  (AR 345.)

3       Plaintiff stayed with friends and family or in a tent; could
4   leave home alone; received rides from others; ran errands,
5   shopped, cooked, and made snacks; participated in household
6   chores; could handle cash and pay bills; and bathed and dressed
7   himself.  (Id.)  He described a poor to good relationship with
8   family, friends, and others.  (Id.)

9       Dr. Rodriguez found Plaintiff genuine and truthful and noted
10  no evidence of psychomotor agitation or retardation.  (Id.)  He
11  noted Plaintiff's coherent and organized thought processes and
12  relevant, nondelusional thought content.  (AR 346.)  Plaintiff
13  denied hallucinations.  (Id.)  He was depressed in mood and sad
14  but not tearful in affect.  (Id.)  His speech was normal and his
15  intelligence appeared "at least average."  (Id.)  Plaintiff could
16  remember four digits forward and one backward, three items
17  immediately, and one of three items after five minutes; he also
18  volunteered that President Kennedy was "murdered by the CIA."
19  (Id.)  Plaintiff knew the names of the President and Governor and
20  the capitals of the United States and California.  (Id.)  He
21  could perform serial threes and correctly complete simple math.
22  (AR 347.)  He could spell "planet" forward but had trouble
23  spelling it backward.  (Id.)  Plaintiff was able to follow the
24  conversation well but claimed not to understand a common proverb
25  or see any similarities between a table and chair.  (Id.)  Dr.
26  Rodriguez opined that Plaintiff's insight into his problems was
27  "not totally clear" and that he "would not trust him with a lost
28  child in a department store."  (Id.)

Dr. Rodriguez diagnosed PTSD, mood disorder, ADHD, and polysubstance dependence and assessed a Global Assessment Functioning ("GAF") Score of 65.[2]  (Id.)  He opined that "as long as this claimant is properly treated for bipolar disorder, PTSD, and ADHD and he abstains from drugs and alcohol, he could easily recover from his symptoms within twelve months."  (AR 348.)  Dr. Rodriguez found that Plaintiff was able to understand, remember, and carry out "simple one or two-step job instructions" but was unable to complete detailed and complex instructions; was slightly limited in his ability to relate to and interact with supervisors, coworkers, and the public; was moderately limited in his ability to maintain concentration, persistence, and pace; was slightly limited in his ability to adapt to the stresses common to a work environment; was slightly limited in his ability to maintain regular workplace attendance and perform work activities on a consistent basis; and was slightly limited in his ability to perform work activities without special or additional supervision.  (AR 348-49.)

---

[2]   A GAF score of 61 to 70 indicates mild symptoms or difficulty in social, occupational, or school functioning.  See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000).  The Commissioner has declined to endorse GAF scores, Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50764-65 (Aug. 21, 2000) (codified at 20 C.F.R. pts. 404 and 416) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

b.   *State-agency physicians*

On December 28, 2010, state-agency psychiatrist Ansar Haroun completed a Mental Residual Functional Capacity Assessment, in which he found Plaintiff moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, and interacting appropriately with the general public but deemed him not significantly limited in other areas, including the ability to understand, remember, and carry out very short and simple instructions.  (AR 325-27.)  The same day, Dr. Haroun completed a Psychiatric Review Technique (see AR 328-39), apparently based on Dr. Rodriguez's examination (see AR 338, 340-42).  Dr. Haroun noted medically determinable impairments of ADHD, mood disorder, PTSD, and polysubstance dependence.  (AR 329-34.)  He noted moderate limitation in social functioning and maintaining concentration, persistence, or pace; mild limitation in activities of daily living; and no episodes of decompensation.  (AR 336.)  He opined that Plaintiff's RFC should include limitations to nonpublic work and simple, repetitive tasks.  (AR 338, 342.)

On August 30, 2011, state-agency physician Balson[3] completed a Chavez AR Case Worksheet, comparing records from Plaintiff's previous SSI application against his existing case file, including June 2009 records from the San Diego Psychiatric Hospital, Dr. Rodriguez's examination, and Plaintiff's failure to appear for his internal-medicine consulting exam.  (AR 350-51.) Dr. Balson found "no new limitations" and recommended affirmance

---

[3]   Dr. Balson's first name is not indicated in the record.

of "the original decision."  (AR 351.)

c.  *Examining psychologist Kathy Vandenburgh*

On May 9, 2012, Kathy Vandenburgh, a doctor of psychology, examined Plaintiff on behalf of the agency.  (AR 395-403.)

Plaintiff reported increasing auditory hallucinations since 2004.  (AR 397.)  He reported that he had been psychiatrically hospitalized "several" times, including four hospitalizations for suicide attempts.  (Id.)  Plaintiff said that he worked for one week cleaning up damaged houses but was fired for talking to himself and acting inappropriately in the presence of homeowners.  (AR 398.)  He had been incarcerated from August 2011 to March 2012 for possession of stolen property and was being treated through a parolee mental-health program, including psychiatric medication and weekly counseling.  (AR 397-98.)  He said he had last used marijuana and crystal meth one and a half years earlier.  (AR 398.)

Claimant reported that he could bathe, dress, cook, and heat food in the microwave.  (Id.)  He visited with family, watched TV, used the computer, and could manage his own funds.  (AR 397-99.)  He lived with and helped care for his mother.  (AR 397, 399.)  Family members did his laundry and helped with shopping and housekeeping.  (AR 398-99.)

Dr. Vandenburgh reported largely normal results of Plaintiff's mental-status exam.  (AR 399-400.)  He was depressed and irritable, but his posture, gait, and mannerisms were normal.  (AR 399.)  Despite his complaints of hallucinations, Plaintiff exhibited no florid or subtle psychotic behavior.  (Id.)  He could recall most of his personal details but not his address,

knew the date, and recalled complaints that prevented him from
working.  (Id.)  He could recall one of three objects after three
minutes.  (Id.)  He was able to focus on tasks, needed little
supervision to persist at them, was able to recall six digits
forward and four backward, and could spell "world" forward but
not backward.  (AR 400.)  Dr. Vandenburgh found Plaintiff's fund
of knowledge to be average.  (Id.)

     Plaintiff achieved borderline and extremely low scores on
the Bender-Gestalt Test-II for visual-motor function and visual
perception.  (Id.)  His scores on the Trail-Making Test for
visual attention and task switching indicated "marked
impairment."  (Id.)  Plaintiff's scores on the Weschler Adult
Intelligence Scale IV Test indicated average verbal
comprehension, low-average perceptual reasoning, low-average
working memory, extremely low processing speed, and a full-scale
IQ in the borderline range.  (AR 401.)  His performance results
on the Weschler Memory Scale IV test were extremely low.  (Id.)
Dr. Vandenburgh found Plaintiff's scores on all administered
tests to be valid.  (AR 400-01.)

     Dr. Vandenburgh found that Plaintiff's intellectual function
was in the low-average to average range and emphasized that "[h]e
complete[d] tasks extremely slowly," had extremely low memory
function, and had visual-motor integration difficulties.  (AR
401.)  Dr. Vandenburgh noted "[p]robable" diagnoses of
schizoaffective disorder, bipolar type, and heroin and crystal
methamphetamine abuse, reportedly in remission.  (AR 401-02.)

     She opined that Plaintiff had moderate limitations in social
function, no limitation in ability to understand instructions,

13

and slight limitation in ability to sustain an ordinary routine
without "sustained supervision." (AR 402.) Although Dr.
Vandenburgh found that Plaintiff was "able to complete a simple
repetitive task that does not involve a significant amount of
memory," he would have "marked impairment keeping up with
appropriate pace and persistence and completes tasks extremely
slowly." (Id.) She opined that "due to symptoms of
schizoaffective disorder, he will likely have marked impairment
maintaining employment until he is stabilized on medication."
(Id.) She also opined that his ability to complete detailed or
complex tasks was markedly limited. (Id.)

Dr. Vandenburgh noted no limitations in Plaintiff's ability
to concentrate for two-hour increments in order to maintain a
regular work schedule. (Id.) She noted no existing limitation
in his ability to avoid day-to-day hazards but opined that
increased depression could create a moderate to marked impairment
given Plaintiff's history of suicide attempts. (AR 403.) She
opined that Plaintiff's memory impairment would possibly require
that he be assisted in handling funds but that continued
remission from substance abuse would "likely" enable him to
manage funds in his own best interest. (Id.)

d. *Examining psychiatrist Steven J. Davis*

On May 24, 2012, psychiatrist Steven J. Davis completed a
Mental Impairment Questionnaire on the basis of two visits with
Plaintiff. (AR 406.) Dr. Davis diagnosed "Major Depression,
recurrent," "Polysubstance Dependence (heroin)," "[rule out]
Borderline Personality Dis[order]," and "ADHD by [history]."
(Id.) He noted Plaintiff's "inconsistent attendance" and

14

"uncertain to guarded response" to treatment.  (<u>Id.</u>)  Dr. Davis
noted Plaintiff's psychiatric medications and indicated no side
effects that would have implications for work.  (<u>Id.</u>)  He opined
that Plaintiff was "impulsive, reckless, [and] narcissistic
[with] anxiety" and deemed his prognosis "fair to poor."  (<u>Id.</u>)

Dr. Davis indicated symptoms such as loss of interest in
activities, impaired impulse control, unstable interpersonal
relationships, maladaptive patterns of behavior, and involvement
in activities with a high probability of painful consequences
that are not recognized.  (AR 407.)  Dr. Davis opined that
Plaintiff had very good ability to carry out short, simple
instructions, maintain attention for two hours at a time, and
adhere to basic standards of neatness and cleanliness.  (AR 408-
09.)  Dr. Davis found limited but satisfactory ability, for
example, to manage simple instructions and simple decisions;
respond appropriately to supervisors; understand, remember, and
carry out detailed instructions; deal with the stress of skilled
or semiskilled work; maintain attendance; and be aware of normal
hazards.  (<u>Id.</u>)  Dr. Davis noted serious limitations, however, in
Plaintiff's ability to sustain an ordinary routine without
supervision, work with or near others, perform at a consistent
pace, respond appropriately to changes in a routine work setting,
deal with normal work stress, interact appropriately with the
public, and maintain socially appropriate behavior.  (<u>Id.</u>)
Dr. Davis opined that Plaintiff was unable to adequately remember
worklike procedures or complete a normal workday and workweek
without interruptions from psychological symptoms.  (AR 408.)

Dr. Davis did not believe that Plaintiff had reduced

intellectual functioning.  (AR 409.)  He opined that Plaintiff
had moderate difficulties in social functioning and maintaining
concentration, persistence, or pace but no restriction in
activities of daily living and no recent episodes of
decompensation.  (AR 410.)  Dr. Davis stated that Plaintiff's
impairments had lasted or would last for at least 12 months, were
not attributable to substance abuse, and would cause him to miss
about four days of work a month.  (AR 411.)

         3.  <u>Analysis</u>

    Plaintiff appears to contend that the ALJ improperly relied
on the opinions of the state-agency physicians over those of the
examining physicians.  (<u>See</u> J. Stip. at 9-10.)  Because the ALJ
failed to give specific and legitimate reasons for discounting
the medical-opinion evidence, remand is warranted.[4]

    As an initial matter, it is not entirely clear which of the
opining doctors' findings and recommendations the ALJ accepted
and which she rejected.  For example, the ALJ's brief summaries
of the opinions of examining doctors Vandenburgh and Rodriguez
omitted significant portions of their assessments, such as
Dr. Vandenburgh's intellectual-function testing (AR 400-01), and
important distinctions between the doctors' assessments, such as
that Plaintiff denied hallucinations to Dr. Rodriguez (AR 346)
but complained of them to Dr. Vandenburgh (AR 397).  (<u>See</u> AR 20-
21.)  The ALJ summarized Dr. Davis's statement as finding that

_____

    [4]  To the extent the opining doctors' findings and
recommendations overlap, any departure from their opinions
arguably must be supported by clear and convincing reasons.  <u>See</u>
<u>Lester</u>, 81 F.3d at 830.  Even under the less demanding "specific
and legitimate" standard, however, the ALJ's reasons fail.

Plaintiff could not work because of mental impairments (AR 21),
when in fact Dr. Davis opined that Plaintiff had good or
satisfactory ability to carry out many workplace functions,
including simple tasks, but would require additional supervision,
have moderate difficulty working with others or the public and
maintaining concentration, persistence, or pace, and would deal
poorly with work stress (see AR 408-10).  The ALJ's brief
treatment of these doctors' assessments, which offer the most
thorough analyses of Plaintiff's mental impairments in the
record, leave the Court guessing whether she properly considered
the evidence therein.  See Vincent ex rel. Vincent v. Heckler,
739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (noting that
ALJ need not discuss all evidence presented but must "explain why
significant probative evidence has been rejected" (internal
quotation marks omitted)); Magallanes v. Bowen, 881 F.2d 747, 751
(9th Cir. 1989) (noting that ALJ can meet burden to give
specific, legitimate reasons for discounting medical opinion "by
setting out a detailed and thorough summary of the facts and
conflicting clinical evidence, stating [her] interpretation
thereof, and making findings").

     The ALJ's explanations for the weights given the examining
doctors' opinions are similarly brief.  Her sole reason for
giving "some weight but not significant weight" to Dr.
Vandenburgh's considerable findings was that the doctor appeared
to have "over-relied on the claimant's subjective complaints of
his auditory hallucinations, as she opined they would markedly
impair him from maintaining employment."  (AR 21.)  The ALJ
found, by contrast, that the medical evidence indicated

17

Plaintiff's hallucinations "were generally controlled with medication treatment."  (Id.)

Nothing in Dr. Vandenburgh's assessment indicates, however, that she "over-relied" on Plaintiff's complaints regarding hallucinations.  Although Dr. Vandenburgh noted Plaintiff's complaints of hallucinations (AR 397), her primary concerns appeared to be Plaintiff's poor pace and memory (see AR 401-03). Moreover, although she opined that symptoms of schizoaffective disorder, bipolar type would markedly impair Plaintiff's ability to maintain employment, Dr. Vandenburgh noted that the impairment would last only until Plaintiff was "stabilized on medication." (AR 401-02.)  Thus, at most, Dr. Vandenburgh may have differed from the ALJ as to whether Plaintiff's hallucinations – which the ALJ agreed "would affect his ability to function around others and maintain concentration" (AR 21) – were adequately controlled by medication as of the date of Dr. Vandenburgh's examination. The ALJ's finding that Dr. Vandenburgh overrelied on complaints of hallucinations is thus not supported by the evidence and not a specific and legitimate reason for significantly discounting her extensive findings.  See Lester, 81 F.3d at 830-31 (examining doctor's opinion can be rejected only for specific, legitimate reasons supported by substantial evidence).  Nor did the ALJ proffer any other reason.

Because Dr. Vandenburgh elicited from Plaintiff information he did not disclose to other examining doctors (see, e.g., AR 397-98 (Plaintiff noting several hospitalizations, history of suicide attempts, and recent incarceration)), performed more extensive testing than the other examining doctors, and found

18

1  evidence of different and more severe mental impairments than her

2  peers, it was particularly important that the ALJ give specific

3  and legitimate reasons for rejecting Dr. Vandenburgh's findings.

4  Cf. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294,

5  1299 (9th Cir. 1999) (error under either "clear and convincing"

6  or "specific and legitimate reasons" standards to reject

7  examining psychologist's report on ground that it was

8  contradicted by less extensive report). Yet the ALJ's summary of

9  Dr. Vandenburgh's findings failed to discuss those with respect

10 to Plaintiff's intellectual function, for instance, or her

11 particular concern with pace and memory. (See AR 20-21.)

12      The ALJ gave a similarly abbreviated explanation for the

13 weight given to Dr. Rodriguez's opinion. (See AR 21.) The ALJ

14 gave his opinion "significant weight" because she found his

15 opinion that Plaintiff was moderately limited in maintaining

16 concentration and attention to be supported by the objective

17 medical evidence, "in light of the claimant's history of auditory

18 hallucinations and depression." (Id.) Notably, Plaintiff denied

19 hallucinations in his examination by Dr. Rodriguez (AR 346), and

20 it is unclear what information the doctor had about Plaintiff's

21 history of hallucinations (see AR 344-46). Dr. Rodriguez

22 diagnosed Plaintiff with neither hallucinations nor,

23 specifically, depression. (See AR 347-48 (diagnosing PTSD, mood

24 disorder, ADHD, and substance dependence and recommending

25 treatment for them and bipolar disorder).) Nor did the ALJ

26 address any of Dr. Rodriguez's other findings, such as that

27 Plaintiff could manage only "simple one or two-step job

28 instructions" (AR 348), or explain which of his findings were

19

1   discounted and why.  (<u>See</u> AR 20); <u>Vincent</u>, 739 F.2d at 1394-95;

2   <u>Magallanes</u>, 881 F.2d at 751.

3       The ALJ's flat rejection of Dr. Davis's opinion was also

4   inadequately supported.  She found his opinion inconsistent with

5   his own findings, which she described as "generally benign."  (AR

6   21.)  As the ALJ noted, however, on the first of Dr. Davis's two

7   opportunities to examine Plaintiff, Dr. Davis described Plaintiff

8   as "manipulative," "impulsive, reckless, narcissistic and

9   sociopathic," with good cognitive function but poor judgment, and

10  he indicated a need to rule out borderline personality disorder

11  with "pronounced sociopathic features."  (AR 20; see AR 405.)

12  Such findings are neither benign nor indicative of capacity for

13  workplace function.  The ALJ further found Dr. Davis's opinion of

14  Plaintiff's limitations not credible because it was prepared "in

15  anticipation of litigation."  (AR 21.)  An ALJ may not, however,

16  reject a doctor's medical opinion on the basis that it was

17  prepared in support of the claimant's application for benefits.

18  <u>Lester</u>, 81 F.3d at 832 ("The purpose for which medical reports

19  are obtained does not provide a legitimate basis for rejecting

20  them."); <u>accord</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d

21  1190, 1196 n.5 (9th Cir. 2004).

22      That Dr. Davis had only two opportunities to examine

23  Plaintiff (<u>see</u> AR 406), while a valid basis for characterizing

24  him as an examining rather than a treating physician (<u>see</u>

25  §§ 416.902, 416.927(c)(2)(i)), merely places him on similar

26  footing to Drs. Rodriguez and Vandenburgh (and above the state-

27  agency physicians) in terms of his "longitudinal history of

28  treating the claimant" (AR 21).  And although the fact that a

20

doctor's opinion is submitted in a "checklist-style" form is a
valid basis for discounting his opinion, <u>Batson</u>, 359 F.3d at 1195
(affirming opinion giving "minimal weight" to opinions expressed
in form of checklist), it is noteworthy that Dr. Davis appears to
have provided additional notes (which were not included in the
record) (<u>see</u> AR 406 (stating, "see attached note"), 411 (same)),
calling into question the ALJ's finding that he gave "minimal
effort" to the task (AR 21).   In all, the ALJ did not identify
specific, legitimate reasons for rejecting Dr. Davis's opinion.
<u>Carmickle</u>, 533 F.3d at 1164; <u>Lester</u>, 81 F.3d at 830-31.

        Finally, although the ALJ gave "great weight" to the
opinions of the state-agency physicians because they had an
opportunity to review "all of the medical evidence" (AR 21), in
fact neither state-agency examiner appears to have reviewed Dr.
Vandenburgh's assessment, Dr. Davis's assessment, or records from
the San Diego County Sheriff's Department, TeleCare San Diego,
San Diego Mental Health Services, or Riverside County Department
of Mental Health (<u>see</u> AR 338, 340-41, 350-51).   Moreover, the ALJ
deemed the state-agency doctors' opinions to be "generally
supported by the evidence" insofar as they found that Plaintiff
should be "limited . . . to simple and repetitive work in a
nonpublic setting" (AR 21; <u>see</u> AR 351 (Dr. Balson recommending
mental RFC for simple, repetitive tasks); AR 338 (Dr. Haroun
limiting Plaintiff to nonpublic work involving simple, repetitive
tasks)), but the ALJ did not adopt that restriction in the RFC
(<u>see</u> AR 17).   Nor did she explain why this finding entitled the
state-agency physicians' opinions to "great weight" while
essentially the same finding by Drs. Rodriguez and Vandenburgh

                              21

did not merit such weight.  (<u>See</u> AR 348 (Dr. Rodriguez opining
that Plaintiff could understand, remember, and carry out "<u>simple</u>
one or two-step job instructions"); AR 402 (Dr. Vandenburgh
opining that Plaintiff could "complete a simple repetitive task
that does not involve a significant amount of memory" but would
do so "extremely slowly").)

Rather than limiting Plaintiff to simple, repetitive tasks,
the ALJ restricted him to "unskilled work."[5]  (AR 17.)
"Unskilled work" and "simple, repetitive tasks" are terms of art
and apply to different limitations.  <u>See</u> SSR 00-4p, 2000 WL
1898704, at *3 (Dec. 4, 2000) (unskilled work indicates job whose
specific-vocational-preparation requirement is at level 1 or 2,
requiring no more than 30 days to learn); <u>Meissl v. Barnhart</u>, 403
F. Supp. 2d 981, 983 (C.D. Cal. 2005) (noting that "the SVP level
in a DOT listing indicating unskilled work, does not address
whether a job entails only simple, repetitive tasks," which is
"more squarely addressed by the GED [reasoning level] ratings"
(alteration in original, internal quotation marks omitted)).
Because it is not clear from the decision upon what basis the ALJ
restricted Plaintiff to unskilled work rather than simple,
repetitive tasks, the Court cannot say that the RFC was supported
by substantial evidence.  <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211,

---

[5]     The ALJ also adopted specific limitations barring
Plaintiff from jobs requiring "intense concentration,"
"hypervigil[a]nce," and "fast paced production or assembly line
type work," presumably in keeping with the findings of Drs.
Rodriguez, Vandenburgh, and Haroun.  (AR 17; <u>see</u> AR 336, 348,
402.)

1217 (9th Cir. 2005).[6]   In sum, because the ALJ failed to provide specific and legitimate reasons for her treatment of the medical-opinion evidence, including the limitation to simple tasks, reversal is warranted.  On remand, the ALJ should specify the bases upon which she weighs the medical-opinion evidence. Because any amendment to Plaintiff's RFC may require that the ALJ reconsider the VE's testimony, the Court does not reach the issue raised in the Joint Stipulation concerning that testimony.

    B.   Remand for Further Proceedings Is Appropriate

    When, as here, an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings.  See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended).  When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true" rule to direct an immediate award of benefits.  See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings");

_____

[6]   Plaintiff notes that a limitation to simple, repetitive tasks would not permit employment in the mail-clerk position identified by the VE.  (J. Stip. at 22); see AR 23; DOT 209.687-026 (mail clerk, reasoning level 3), available at 1991 WL 671813; see Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) (finding "an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning").  Such a restriction would, however, likely be consistent with the level-2 reasoning required of the industrial-cleaner and office-helper positions.  See DOT 239.567-010 (office helper, reasoning level 2), available at 1991 WL 672232; DOT 381.687-018 (industrial cleaner, reasoning level 2), available at 1991 WL 673258; Lara v. Astrue, 305 F. App'x 324, 326 (9th Cir. 2008); Etter v. Astrue, No. CV 10-582-OP, 2010 WL 4314415, at *4 (C.D. Cal. Oct. 22, 2010).

1  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019-20 (9th Cir. 2014).

2      Under the credit-as-true framework, three circumstances must
3  be present before the Court may remand to the ALJ with
4  instructions to award benefits:

5      (1) the record has been fully developed and further
6      administrative proceedings would serve no useful purpose;
7      (2) the ALJ has failed to provide legally sufficient
8      reasons   for   rejecting   evidence,   whether   claimant
9      testimony or medical opinion; and (3) if the improperly
10     discredited evidence were credited as true, the ALJ would
11     be required to find the claimant disabled on remand.

12 <u>Garrison</u>, 759 F.3d at 1020.  When, however, the ALJ's findings
13 are so "insufficient" that the Court cannot determine whether the
14 rejected testimony should be credited as true, the Court has
15 "some flexibility" in applying the credit-as-true rule.  <u>Connett</u>
16 <u>v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003); <u>see also</u>
17 <u>Garrison</u>, 759 F.3d at 1020 (noting that <u>Connett</u> established that
18 credit-as-true rule may not be dispositive in all cases).  This
19 flexibility should be exercised "when the record as a whole
20 creates serious doubt as to whether the claimant is, in fact,
21 disabled within the meaning of the Social Security Act."
22 <u>Garrison</u>, 759 F.3d at 1021.

23     Here, under <u>Connett</u>, remand for further proceedings is
24 appropriate because the ALJ failed to provide specific and
25 legitimate reasons for discounting the medical-opinion evidence,
26 yet the Court has doubts as to whether Plaintiff is in fact
27 disabled given that he could possibly work performing simple
28 tasks.

24

**VI.   CONCLUSION**

    Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[7] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Opinion.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 20, 2015        _____

                          JEAN ROSENBLUTH
                          U.S. Magistrate Judge

---

    [7]   That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."